# The McGraw Tire and Rubber Co. v. Payne, Director General of Railroads.

*Railroads—Bills of lading—Construction—Provision that claim must be made within six months of loss.*

On Dec. 12, 1918, the plaintiff, doing business in New York, delivered thirty-six rubber tires to the Director General of Railroad's, consigned to the R. Co., Phila.; Jan. 11, 1919, the shipment reached Philadelphia, consignee was notified and acceptance refused; Feb. 12th, shipment was stored by defendant with warehouse company; March 18th, defendant notified plaintiff that goods were in storage in warehouse; March 21st, plaintiff wrote warehouse company of non-delivery of tires; March 22nd, warehouse company advised plaintiff that only twenty-seven tires had been delivered to it; March 28th, plaintiff notified defendant that bill of lading showed shipment of thirty-six, and asked it to start tracer to find the nine missing tires; April 11th, plaintiff again wrote defendant, requesting results of its search; April 21st, plaintiff paid storage charges and twenty-seven tires were delivered to it by warehouse company; Aug. 1st, plaintiff gave formal written notice to defendant of claim for $343.39 to cover cost of nine missing tires. The bill of lading contained a clause that in case of failure to make delivery, claim must be made within six months after a reasonable time for delivery had elapsed: *Held*, on statutory demurrer to statement containing the foregoing averments, that the claim was in time.

Case stated. C. P. No. 1, Phila. Co., June T., 1920, No. 6381.

*Byron, Longbottom & Pape,* for plaintiff; *J. H. Rhoads,* for defendant.

McDevitt, J., Feb. 3, 1923.—This case is before the court in the nature of a case stated by agreement of counsel, and argument has been heard on the same.

The facts are briefly as follows:

On Dec. 12, 1918, the plaintiff, doing business in the City of New York, delivered to the Director General of Railroads, U. S. Railroad Administration, thirty-six rubber tires, consigned to L. S. Hall Rubber Company, No. 804 North Carlisle Street, Philadelphia.

On Jan. 11, 1919, said shipment reached Philadelphia and notice of arrival was mailed by defendant to the consignee at 4.50 P. M. Acceptance was refused, according to the defendant.

On Feb. 12, 1919, shipment was stored by defendant with the Merchants' Warehouse Company in the City of Philadelphia, and on March 18, 1919, plaintiff was notified by defendant that the goods were in storage with the warehouse company.

On March 21, 1919, plaintiff addressed a communication to the Merchants' Warehouse Company, advising the latter that notice had been received from the defendant concerning the non-delivery of the tires, and asking for further information.

Under date of March 22, 1919, the Merchants' Warehouse Company advised the plaintiff that twenty-seven, not thirty-six, tires had been delivered to it by the defendant, and that the manifest showed a shortage of nine tires when the consignment was received by the warehouse company.

On March 28, 1919, plaintiff notified defendant that the original bill of lading showed a shipment of thirty-six tires, and called defendant's attention to the notice of March 18th, which was the first information received by plaintiff that the shipment had been refused by the consignee and had been placed in storage. In the same communication plaintiff requested defendant to start a tracer to locate the nine missing tires.

On April 11, 1919, plaintiff again inquired of defendant, in writing, concerning the results of its search for the missing tires. This communication

was acknowledged to the effect that defendant was still trying to locate the nine tires and would advise plaintiff as soon as possible.

On April 21, 1919, one month and three days after the date of the first notice from the defendant to the plaintiff that the tires were in storage, plaintiff paid the storage charges, and the twenty-seven tires were returned by the warehouse company.

From April 21st until Aug. 1st, the record shows no activity except a plaintiff waiting for information and a defendant under promise to continue the investigation and report results as soon as possible.

On Aug. 1, 1919, plaintiff made a formal written claim to the defendant for $343.39 to cover the cost of the nine missing tires. Said claim was made on the form of the plaintiff company and was acknowledged on Aug. 4th by the defendant by a postcard form used for such purposes.

The bill of lading provides:

"Except where the loss, damage or injury complained of is due to delay or dmage while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property (or in case of export traffic, within nine months after delivery at port of export), or *in case of failure to make delivery, then within six months (or nine months, in case of export traffic) after a reasonable time for delivery has elapsed; and suits for loss, damage or delay shall be instituted only within two years and one day* after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

The provision relating to non-delivery, of course, controls this situation, and the plaintiff contends that Aug. 1st, the date upon which formal claim was made, is within the six months' provision, while defendant contends that six months should be computed from Jan. 11th, the date upon which notice was given to the consignee of the arrival in Philadelphia of the shipment. There is no distinction in the bill of lading between the time allotted to a consignor to claim damage for non-delivery and the time allotted to a consignee.

Under the facts before the court, the primary and perhaps the most important point to be determined is when the six months' period started to run. Theoretically, if only twenty-seven tires had been delivered to the consignee and the shipment nine tires short, the six months would have run against the consignee from the date of delivery.

Were the plaintiff in this case the consignee of the goods, unquestionably the claim of Aug. 1, 1919, if such be construed to be the first claim filed, is beyond the six months' period.

Accepting the facts as they appear, however, and bearing in mind that claim for damages or loss does not have to be made on any particular form or in any special manner—and the claim is really putting the other party on notice that there has been a loss—did not the defendant have such notice under date of March 28th, when the plaintiff notified the defendant of the shortage and requested that they be traced? Requesting defendant to institute a tracer is denied by the defendant to be notice, but on April 11th the first request was followed by a second, which was also acknowledged by the defendant to the effect that an effort was still being made to locate the missing tires.

If the defendant's contention is tenable, namely, that it was only required to give notice to the consignee, did it not assume an additional responsibility when it gave notice to the plaintiff about the non-delivery of the tires? If

2 D. & C.

DISTRICT AND COUNTY REPORTS. 653

The McGraw Tire and Rubber Co. v. Payne, Director General of Railroads.

the defendant thought that from Dec. 12, 1918, the date of shipment, to Feb. 12, 1919, the date when stored, was a reasonable time within which to make delivery, why should the plaintiff be asked to assume that from Dec. 12, 1918, to Jan. 11, 1919, the date upon which the goods reached Philadelphia, was a reasonable time within which to expect delivery? The railroads, being more familiar with embargoes, preferentials and other causes of delay in transportation, can better be presumed to know what is a reasonable time than the shipper.

In its first communication to the plaintiff the warehouse company stated that there was a shortage of nine tires when shipment was placed in storage. This fact was called to the attention of the defendant and was never denied; but subsequently, on Oct. 2, 1919, nearly nine months after the arrival in Philadelphia of the shipment, the nine missing tires were sold by the warehouse company as unclaimed freight. The defendant, by reason of its tracer, should either have ascertained before April 1st that the warehouse company was in error when it stated that twenty-seven, and not thirty-six, tires were received by it, or in the conduct of its investigation should have located the missing tires if they were still in the defendant's custody at the time the shortage was first noticed.

It was impossible to file a claim for liquidated damages or specific loss until the plaintiff gave the defendant a reasonable time in which to conduct its investigation. The plaintiff should not be penalized for the failure of defendant's employees to locate tires that must at all times to have been in close proximity to the warehouse.

The other questions raised are collateral to this. The court feels that the stipulated requirement as to notice of claim was made within the prescribed time and in such manner and form as are acceptable under and in compliance with the decisions of the courts of this Commonwealth, and that the plaintiff is entitled to recovery.

And now, Feb. 3, 1923, judgment is entered for The McGraw Tire and Rubber Company, a corporation, in the sum of $343.39, with interest from Oct. 2, 1919.